## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| MICHELLE L. HA,<br>　　　　　Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION<br>SOLUTIONS, INC.,<br>　　　　　Defendant. | **Case No.:**<br><br>**COMPLAINT AND<br>DEMAND FOR JURY TRIAL**<br><br>**FCRA, 15 USC §1681e(b)** |

## <u>CIVIL COMPLAINT</u>
## <u>JURY DEMAND</u>

NOW COMES Plaintiff Michelle L. Ha, ("Plaintiff"), by counsel, alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. against Defendant, Experian Information Solutions, Inc. ("Experian" or "Defendant")

## <u>INTRODUCTION</u>

1.      Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681 <u>et</u> <u>seq</u>. by Experian.  Plaintiff contends Defendant failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports, and consequently reported inaccurate information about Plaintiff.

## JURISDICTION AND VENUE

2.      This Court has federal question jurisdiction because this action arises out of violations of federal law.  28 U.S.C. §§ 1331.  Jurisdiction is also proper pursuant to 15 U.S.C. 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

3.      Venue in the District of Minnesota is proper pursuant to 28 U.S.C. § 1391 because Defendant regularly transacts business within this District, is otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to the claims occurred in this District.

## PARTIES

4.      Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

5.      Plaintiff is a natural person who resides in Hennepin County, Minnesota.

6.      Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. §1681a(c).

7.      Defendant Experian is a credit reporting agency, as defined in 15 U.S.C. §1681a(f)).  On information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 USC 1681a(d), to third parties. Experian's principal place of business is located at 475 Anton Boulevard, Costa Mesa, California 92626.

8.     During all time pertinent to this Complaint, Experian was authorized to conduct business in the State of Minnesota and conducted business in Minnesota on a routine and systematic basis.

9.     Experian regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 USC 1681a(d), to third parties. Experian regularly furnishes consumer reports to third parties for monetary compensation, fees and other dues, using means and facilities of interstate commerce, and is therefore a "consumer reporting agency," as defined by 15 U.S.C. §1681a(f) of the FCRA.

10.    During all time pertinent to this Complaint, all Defendants acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

11.    Any violation by Defendants was not in good faith, was knowing, negligent, willful, and/or intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

## FACTUAL ALLEGATIONS

12.    Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

13.    Defendant reports consumer information about Plaintiff and other consumers through the sale of consumer reports (credit reports).

14.    Defendant's credit reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name,

current and prior addresses, date of birth, and phone numbers; (ii) <u>Tradeline Information</u>: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) <u>Public Record Information</u>: this section typically includes public record information, such as bankruptcy filings; and (iv) <u>Credit Inquiries</u>: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

15.     Defendant gains access to consumer information from various sources, including furnishers who provide consumer information to Defendant, and information Defendant independently sources itself or through third party providers/vendors or repositories, including computerized reporting services like PACER.

16.     The information reported by Defendant contributes to consumer creditworthiness, including their FICO Scores, which are calculated using information contained in Defendant's consumer credit reports.

17.     The majority of financial services lenders (e.g., banks, creditors, lender) rely upon credit reports, FICO Scores and other proprietary third-party algorithms – "scoring" models – to interpret the information in a credit report.

18.     These algorithms use variables or "attributes" derived from the credit report to calculate a "credit score," which ultimately determines consumer creditworthiness.

19.     FICO Scores factor the following: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

20.     Payment history refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late or missed.

21.     The more severe, recent, and frequent late payments are, the greater the harm to the FICO Score.

22.     In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently this occurred, and how many delinquent accounts exist. However, once a delinquent account has been remedied the longer the account stays current the more a consumer's FICO Score should increase.

23.     Defendant obtained and reported Plaintiff's consumer bankruptcy information in both the Public Records section of her consumer credit report, as well as the individual account tradelines.

24.     Defendant had notice of Plaintiff's bankruptcy discharge through independent collection of consumer information as well as from information furnished by tradeline furnishers. Defendant reported Plaintiff's bankruptcy filing and/or discharge in the public record section of their credit reports, as well as in individual account tradelines.

25.     Defendant is well aware that the effect of a discharge Order in a Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

26.     Information regarding whether a debt has been reaffirmed or successfully challenged through an adversary proceeding is retrievable from the same sources Defendant obtains the bankruptcy case information, as well as from information provided to Defendant from furnishers of account/tradeline information.

27.     Rather than following reasonable procedures to assure maximum possible accuracy, Defendant report information regarding pre-bankruptcy debts even if that information ignores or contradicts information provided by furnishers of account/tradeline information or information contained in public court records that Defendant has obtained through its independent efforts, or could easily obtain through reasonably available public records.

28.     Experian is on continued notice of its inadequate post-bankruptcy reporting procedures, including inaccurate balances, and account and payment statuses, through the thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints filed against it for its inaccurate reporting following a Chapter 7 discharge.

29.     Plaintiff filed for Chapter 7 Bankruptcy on November 21, 2019 in the United States Bankruptcy Court for the District of Minnesota (Minneapolis), case no. 19-43552.

30.     There were no objections during Plaintiff's Chapter 7 Bankruptcy, or proceedings to declare any debt "nondischargeable" pursuant to 11 U.S.C. § 523 et seq. There were also no requests for relief from the "automatic stay" codified at 11 U.S.C. §362 et seq. while the Plaintiff's Bankruptcy was pending to pursue the Plaintiff on any personal liability for listed debts.

31.     Accordingly, Plaintiff received an Order of Discharge, discharging her personal liability on the dischargeable debts on February 19, 2020.

32.     Upon information and belief following Plaintiff's Chapter 7 Bankruptcy, Defendant prepared one or more credit reports concerning Plaintiff. Defendant reported Plaintiff's Chapter 7 Bankruptcy case information, including the case number, court, filing date, and discharge.

33.     Defendant also reported Plaintiff's credit history, including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual or joint accounts), the date the accounts were opened, status, and the date of the last status update.

34.     For accounts included in Plaintiff's Chapter 7 Bankruptcy, including collection accounts, Defendant is generally required to report the status of these debts as discharged through bankruptcy, unless the furnishers provide information showing that a debt was excludable from discharge.

35.     Nevertheless, Defendant continued to report one or more accounts inaccurately, , instead of accurately reporting the status of this pre-petition debt as included in or discharged in Chapter 7 Bankruptcy with a $0 balance.

36.     Experian was reporting Plaintiff's Affirm, Inc. account ("Affirm Account 1") account no. XXXXXXX13SZ opened in September 2019, inaccurately.

37.     Experian reported the Affirm Account 1 as "open" with a "recent balance" of $130 "as of Apr 2020." The Affirm Account 1 was included in Plaintiff's bankruptcy and discharged on February 19, 2020.

38.     Experian was reporting Plaintiff's Affirm, Inc. account ("Affirm Account 2") no. XXXXXXXJM9E opened in September 2019, inaccurately.

39.     Experian reported the Affirm Account 2 as open" with a "recent balance" of $96 "as of Apr 2020." The Affirm Account 2 was included in Plaintiff's bankruptcy and discharged on February 19, 2020.

40.     Experian reported Affirm Account 1 and Affirm Account 2 as open with a balance during Plaintiff's bankruptcy stay.

41.     Experian did not report that Affirm Accounts 1 and 2 had been discharged in bankruptcy despite reporting the bankruptcy filing in the public records section and reporting other unsecured pre-bankruptcy accounts as "Discharged through Bankruptcy Chapter 7".

42.     Notably, the other national consumer reporting agencies Equifax and Trans Union did not inaccurately report the Affirm Accounts 1 and 2 like Experian.

43.     Upon information and belief, Experian also had notice of Affirm, Inc.'s unreliable procedures to properly update the reporting of pre-Chapter 7 debt upon discharge of a bankruptcy, and may therefore have reported information contradicted by Experian's own records and knowledge of Plaintiff's bankruptcy discharge in unreasonable reliance on a furnisher.

44.     Experian is inaccurately reporting that Plaintiff has open balances that she does not actually have, thereby damaging her credit scores. Experian's reporting of a balance Plaintiff does not owe is negative and damages her credit utilization, scores, and credit worthiness.

45.     Defendant inaccurately report the status of these debts, even though the debts are in fact discharged, Plaintiff is no longer personally liable for the debts, and Defendant has actual knowledge Plaintiff filed for and received a Chapter 7 Bankruptcy discharge.

46.     Consequently, Plaintiff suffers damages, including credit harm, loss of credit opportunity, credit denials, and other financial harm.  Plaintiff also suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

47.     Upon information and belief, Plaintiff applied for and was denied credit cards with more than one creditor due to Defendant's inaccurate reporting which was published to  these creditors in their review of Plaintiff's application.

## COUNT I
### Violations of the FCRA, 15 U.S.C. § 1681e(b)

48.     Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

49.     The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

50.     Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

51.     The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

52.     The FCRA requires credit reporting agencies, like Defendant, to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

53.     Defendant negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of information pertaining to discharged debts that arose prior to and were included in the consumer's bankruptcy.

54.     Consequently, Defendant routinely report inaccurate, and materially misleading information about Plaintiff, without verifying the accuracy of this information, or updating this information as required by § 1681(e)(b) when Defendant possesses information inconsistent with the reported information, and possesses information establishing that the reported information is in fact inaccurate.

55.     Defendant knew or should have known of its obligations under the FCRA, especially pertaining to discharged debts. These obligations are well established by the plain language of the FCRA, in promulgations of the Federal Trade Commission, well-established case law, and in prior cases involving Defendant from which Defendant is on notice of their unreasonable procedures.

56.     Defendant has obtained or has available substantial written materials that apprised Defendant of duties and obligations mandated by the FCRA, including where consumers file for Chapter 7 Bankruptcy.

57.     Defendant is well aware that the effect of a discharge Order in a no asset Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

58.     Defendant regularly conducts voluntary public records searches with the intention of including bankruptcy information on the credit reports it sells to other parties.

59.     Defendant voluntarily conducted public records searches and obtained information about Plaintiff's bankruptcy filing and bankruptcy discharge to report this information in its consumer credit reports.

60.     The diligence Defendant exercises in recording consumer bankruptcy filings is not replicated in Defendants' reporting of the effect of the bankruptcy upon consumer debts, including the bankruptcy discharge.

61.     Despite knowledge of these legal obligations, Defendant acted willfully in consciously breaching known duties and deprived Plaintiff of her rights under the FCRA.

62.     Defendant violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to ensure maximum possible accuracy of Plaintiff's consumer disclosure.

63.     Defendant possesses information from which Defendant should know the reported information is inaccurate, as Defendant includes the date the consumer filed

bankruptcy, whether the consumer obtained a bankruptcy discharge, as well as the date the inaccurate tradeline account/debt arose or was otherwise opened by the consumer.

64.     Defendant is also on notice from other account tradelines reported by Defendant that indicate those accounts were included in/discharged in bankruptcy.

65.     Defendant is well aware that discharged debts should not be reported as late, past due, or with an outstanding balance after the debt is discharged.

66.     In this case, the inaccurately reported debts pertain to Chicago Ave Garage FCU debts that Defendant knew are several months old, and which predated Plaintiff's Chapter 7 Bankruptcy.

67.     Alternatively, Defendant was negligent, entitling Plaintiff to recover damages pursuant to 15 U.S.C. § 1681o.

68.     Defendant's inaccurate and negative reporting damaged Plaintiff's creditworthiness, as Defendant reports the existence of late payments after the filing of the petition on accounts that were included in Plaintiff's Chapter 7 bankruptcy.

69.     Defendant is a direct and proximate cause, as well as a substantial factor in causing actual damages and harm to Plaintiff, including, but not limited to, credit denials, embarrassment, anguish, and emotional and mental pain.

70.     Defendant is therefore liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 et seq.

71.     Consequently, Plaintiff suffers damages, including credit harm, loss of credit opportunity, credit denials, and other financial harm.   Plaintiff also suffers

interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendant for the following:

Fair Credit Reporting Act Violations

(a)     An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(b)     An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(c)     An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2),

(d)     Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2); and

(e)     Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

## **JURY DEMAND**

Plaintiff hereby demands jury trial on all issues so triable.

RESPECTFULLY SUBMITTED this 10th day of December 2020,

By: */s/Jenna Dakroub*
 Jenna Dakroub
Bar Number: 0401650
Attorney for Plaintiff Michelle L. Ha
**Price Law Group, APC**
8245 N. 85th Way
Scottsdale, AZ 85258
E: jenna@pricelawgroup.com
T: (818) 600-5513
F: (818) 600-5413